## THE UNITED STATES, *ex rel.* THE WILCOX & GIBBS SEWING MACHINE CO. *v.* E. M. MARBLE.

*(Supreme Court, District of Columbia, October Term, 1881.)*

1. The several acts of Congress regarding the registration of prints designed to be used as labels, do not exclude from registration a label containing matter which might be registered as a trade-mark, nor does the fact that a label, bearing such distinguishing marks as entitle it to registration as a trade-mark, exclude it from registration as a label if the owner desires it to be registered as such; whether the Commissioner of Patents is to regard it as the one or the other, depends wholly upon the will of its proprietor.

2. The owner of a label, entitled to registration under the law, made application to the Commissioner of Patents for its registration; applicant had complied with all the requirements of the law, but the examiner in charge of that department of the Patent Office rejected the application, on the ground that the label was not of the class entitled to registration, whereupon applicant, instead of appealing to the Commissioner of Patents, as he might have done, petitioned this Court for a *mandamus* to compel the Commissioner to register the label; the Commissioner, in his answer to the rule to show cause, recited the facts of the failure of the applicant to appeal to the Commissioner from the examiner's decision, but at the same time approved of and endorsed the reasons of the examiner for refusing to register the label. *Held,* That a peremptory *mandamus* to register the label should issue, and so ordered.

This was an application for mandamus against the Commissioner of Patents, which was ordered to be heard in the General Term in the first instance.

The petition set forth that the relator, a corporation under the laws of the State of New York, had, on or about the third day of May, 1881, made application under the act of Congress, approved June 18th, 1874, entitled "An act to amend the law relating to patents, trade-marks and copyrights," to the Commissioner of Patents, for the registration of a label designed to be used for hosiery or other knit goods, made in accordance with certain improvements, for which it had obtained letters patent of the United States, and had paid to the said Commissioner the sum of six dollars, the fee required by law in such cases, and that thereupon it became the duty of said Commissioner, under the said act of Congress, to cause said label to be registered; yet the said Commissioner had refused to register said label or cause the same to be registered, to the great injury of relator, etc.

The petition concluded with a prayer that an alternative writ of mandamus be issued, directed to said Commissioner, commanding him to cause said label to be registered, or show cause for his refusal so to do.

The writ having issued, the answer of respondent was as follows:

The respondent, E. M. Marble, Commissioner of Patents, makes return to the order of the honorable the Supreme Court of the District of Columbia, in the above entitled matter, to show cause why a writ of mandamus should not issue against him, as prayed by the relator, as follows:

It appears by the records and files of this office, that on May 3, 1881, the relator filed an application for the registration of what it alleged to be a label, paying the fee of six dollars, the amount required by law for the registration of labels; that on the 6th of the same month, applicant was notified by the examiner having charge of the registration of labels, that the monogram formed of the letters W and G, forming part of the alleged label, could not be registered, because it amounted to a trade-mark; that subsequently, and on the 10th of the same month, Mr. Pollock, the attorney of said corporation, having

filed his power of attorney, requested to be advised on what ground the label was rejected, stating that the same was a label and not a trade-mark; and that on the 14th of the same month the said examiner again informed applicant, through its attorney, that the application could not be allowed for the reasons given in his former letter.

It will thus be seen that all action taken in the office upon the application of the relator was by the examiner having charge of the applications for the registration of labels.

While it is true that the Commissioner of Patents is charged with the transaction of all business done in the Patent Office, it is also true that he cannot and does not know of the pendency of individual applications, except such as are brought to his attention on appeal or by inquiry for instruction by examiners.

The first actual knowledge that the respondent had of the pendency of the application in question, was the service upon him of the order to show cause why the writ of mandamus should not issue compelling him to register applicant's alleged label.

The practice of the office allows parties whose applications are rejected by examiners to have the decisions of the examiners rejecting such applications reviewed on appeal by the Commissioner. No appeal of this kind was taken by the applicant, although its attorney, at least, must have known, and did know what the practice of the office in such cases is.

It is respectfully submitted, therefore, that the application for a writ was premature, for the reason that the respondent should not be called upon to show cause why such writ should not issue, until the case or matter which the relator complains of has been brought to his personal attention.

It cannot be said that applicant's petition has been denied by the Commissioner of Patents, in view of the practice of the office, until the Commissioner has some personal knowledge of his application, and while applicant has a remedy in the office for the correction of what he believes to be erroneous action, he has no ground to ask for the intervention of this Court by writ of mandamus to compel an officer to do what, upon application to that officer, might have been done.

For further answer, I respectfully submit that the Commissioner of Patents must determine what is and what is not proper subject matter for registration as a label.

The statute says: "There shall be paid for recording the title of any print or label, *not a trade-mark*, six dollars, which shall cover the expense of furnishing a copy of the record, under the seal of the Commissioner of Patents, to the party entering the same." The statute also prescribes that a fee of twenty-five dollars shall be paid for the registration of a trade-mark.

It becomes necessary, therefore, in each and every case, for the officer whose duty it is to receive and register labels and trade-marks, to determine, upon the receipt of such applications, whether they belong to one or the other class, and upon such determination, to require the payment of the fee which the law prescribes.

Such has been the practice of this office since the passage of the laws providing for the registration of trade-marks and labels.

A trade-mark is defined by Webster to be: "A distinguishing mark or device used by a manufacturer on his goods or labels, the legal right in which is recognized by law." A label is defined to be: "First, a tassel; second, a narrow slip of silk, paper, parchment, etc., affixed to anything denoting its contents, ownership, and the like, as the label of a bottle or a package; third, a ribbon or silk, a slip of paper, parchment, etc., attached to a diploma or legal document to hold the appended seal; fourth, any paper annexed to a will by way of addition, as a codicil."

It must be presumed that Congress, in passing the laws providing for the registration of trade-marks and labels, intended that certain fees should be paid for the registration of what was then known and recognized as labels and as trade-marks. It is not competent for a party to state that this or that is a label, and this or that is a trade-mark, and thus determine its character.

Whether it is a label, or whether it is a trade-mark, must be determined by the definition which has been given and accepted everywhere as clearly and fully covering the meaning of those words.

The action taken by the examiner in this case, was in accordance with the well-settled rulings and decisions of the office.

He refused to allow applicant to register, as a label, subject-matter clearly and undeniably included within the definition of a trade-mark, as he would have denied the registration of any application for a trade-mark of subject-matter properly registerable as a label.

I submit that the writ should be denied, for the following reasons:

*First*—Because the registration of the alleged label has never been denied by the respondent.

*Second*—Because the alleged label contains subject-matter clearly registerable as a trade-mark, and therefore not registerable under the statute as a label.

E. M. MARBLE,
*Commissioner of Patents.*

A report of the examiner having charge of the registration of labels, addressed to the Commissioner, giving his reasons for refusing to register the label, accompanied the foregoing answer, and was as follows:

SIR: In the matter of the application of The Wilcox & Gibbs Sewing Machine Company for registration of a label; wherein on petition of A. Pollock, Esq., a rule to show cause why registration has been refused by the office has been issued by the Supreme Court of the District of Columbia, and referred to me by yourself for report as to the examiner's action on the case, I have the honor to report:

On the 3d of May, 1881, the above named company duly filed an application for the registration of a label for hosiery, paying the fee of six dollars required by law. On the 6th of May a letter was written to applicant (not at that time represented by attorney), in which they were informed that the monogram formed of the letters W & G forming part of the alleged label could not be registered, for the reason that it amounted to a trade-mark.

On the 10th of May, Mr. Pollock, now appearing as attorney for the applicant, filed an argument, in which he questioned the right of the office to determine that matter presented as a label could be rejected, for the reason given, and advised the office that the label was not a trade-mark. The examiner's second letter merely repeated the former action, citing a decision of the Commissioner in support thereof.

The case having been twice rejected, was now in condition for appeal to the Commissioner in person, the usual and recognized recourse in label cases when registration has been refused by the examiner, but the record shows no such step taken in that direction.

As regards the merits of the case, the examiner is guided in his practice by former decisions based upon the act of June 18, 1874, by which the office is necessarily governed.

This act distinctly excludes trade-marks from the protection it was designed to afford. In the case of *Simpson & Sons*, 10 O. G., 333, the acting Commissioner sustained the examiner in his refusal to register a label in which the arbitrary word "Eddystone" was included. He says:

"Applicant will be permitted to register the name of his firm, their place of business, description of the nature, quality and quantity of his parcels, *as a label;* but he cannot be allowed to claim the arbitrary words and fanciful figures mentioned as part of the label. *These should be registered as trademark.*"

In the case of *ex parte Thaddeus Davids & Co.*, 16 O. G., 94, cited in examiner's second letter, the Commissioner held, that "The presence in a label of matter registrable as a trade-mark excludes the whole from registration."

There appears never to have been any question in the office that a monogram, such as that shown in applicant's *fac simile*, constituted a registrable trade-mark.

The fact, that, from time immemorial, monograms have been regarded as trade-marks, is set forth in Browne on Trade-Marks, pars. 15 and 262, and the office practice has been in accordance with this doctrine.

The examiner cannot find that it has ever been disputed, but it is clearly laid down in Commissioner M.'s decision in the case of the *Dr. Harter Medicine Co.*, July 29, 1879. This was an appeal from the examiner's refusal to register a trade-mark in which certain descriptive matter was shown in connection with a monogram, and the acting Commissioner said:

"Applicant may amend its application and restrict the trade-mark to the monogram and shield. The balance of the label should be registered as a label."

With the doctrine and practice so clearly established, as these rulings indicate, there has never been any room for question as to the propriety of the examiner's action.   If applicant deemed it erroneous, it was so because the decisions on which it was based were erroneous, and this applicant has an opportunity to show whenever he chooses to avail himself of the re-hearing by the Commissioner in person to which he is entitled.                    Respectfully submitted,

N. A. SEELY,

*Examiner of Trade-Marks.*

Mr. Justice JAMES delivered the opinion of the Court.

The relator claims the right to have its label registered in the Patent Office, as a label designed to be used on an article of manufacture, under the act of June 18, 1874.   In order to ascertain the intent of that act, it will be necessary to refer to the statutory provisions relating to the same matter existing at the time of its passage.

Sec. 4937 of the Revised Statutes provided as follows:

"Any person domiciled in the United States      *      *      * who intends to adopt and use any trade-mark for exclusive use within the United States, may obtain protection for such lawful trade-mark, by complying with the following requirements:

" *First*—By causing to be recorded in the Patent Office a statement specifying the names of the parties      *      *      * who desire the protection of the trade-mark; the class of merchandise, and the particular description of goods comprised in such class, by which the trade-mark has been, or is, intended to be appropriated; a description of the trade-mark itself, with *fac similes* thereof, showing the manner in which it has been, or is, intended to be applied or used, and the length of time, if any, during which the trade-mark has been in use.

" *Second*—By making payment of a fee of $25," etc.

Sec. 4939 excluded from the class of registerable trade-marks any mark which was merely the name of a person, unaccompanied by a mark sufficient to distinguish it from the same name when used by other persons.

These sections applied to trade-marks which were in the form of *labels* bearing distinguishing marks.

It was at the same time provided by Sec. 4952, that—

"Any citizen of the United States, or resident therein, who shall be the author      *      *      *      designer or proprietor

of any * * * engraving, cut, print, etc., shall, upon complying with the provisions of this chapter, have the sole liberty of printing, * * * publishing * * * and vending the same."

Secs. 4956 and 4957 contain the provisions referred to, namely: for the deposit of copies and the recording of a description of such engraving, cut or print in the office of the Librarian of Congress. As the application of these sections did not depend upon the importance of the print, they, of course, included prints which were to be used merely as labels.

It is plain that these contemporaneous provisions relating to trade-marks and prints, authorized any person who owned a label bearing distinguishing marks to have it recorded in the Patent Office as a trade-mark, or, if he preferred to do so, to have it registered in the office of the Librarian of Congress as a mere print. It must bear such distinguishing marks, in order to be admitted to record as a trade-mark; but the fact of bearing them did not exclude it from registry as a print. The Librarian of Congress had no discretion to refuse to recognize it as a print, because it *could* be recognized by the Commissioner of Patents as a trade-mark. Whether it should be treated as the one or the other depended wholly on the will of its proprietor. It was for him to determine whether he would adopt it as his trade-mark, and whether he would make the declarations necessary to that end.

When the registering of such prints as were designed to be used as labels on manufactures was transferred from the office of the Librarian of Congress to the Patent Office, by the act of 18th of June, 1874, was this choice of the owner of the label as to the character which it should have, and the purposes which it should serve, taken away?

The first section of that act provides, that no person shall maintain an action for the infringement of his copyright of any book, "print, cut, engraving," etc., unless he shall give notice thereof by inscribing upon some visible portion of such book, print, engraving, certain words.

The third section provides:

"That, in the construction of this act, the words 'engraving,' 'cut' and 'print' shall be applied only to pictorial illus-

trations or works connected with the fine arts. And no prints or labels designed to be used for any other article of manufacture shall be entered under the copyright law, but may be registered in the Patent Office. And the Commissioner of Patents is hereby charged with the supervision and control of the entry or registry of such prints or labels, in conformity with the regulations provided by law as to copyright of prints; except that there shall be paid for recording the title of any print or label not a trade-mark, six dollars, which shall cover the expense of furnishing a copy of the record, under the seal of the Commissioner of Patents, to the party entering the same."

After the passage of this act, the Commissioner of Patents was charged with two distinct duties relating to labels. If any person, intending to adopt a particular label as his trade-mark, desired to obtain protection for it, the Commissioner was bound, provided it bore the necessary distinguishing marks, to cause to be recorded the statement of the owner specifying the facts prescribed by the statute. He was now required to register also labels which were not trade-marks. But was he clothed with power to control the entry of labels so far as to determine that a label which, by reason of its distinguishing marks, might have been entered as a trade-mark, should not be admitted to registry as "a label not a trade-mark?" The only reference to any control to be exercised by him is found in the clause which provides that he shall have "control of the entry or registry of such prints or labels, in conformity with the regulations provided by law as to copyright prints." But this is merely the same control which has been exercised over the registering of these labels, as copyright prints, by the Librarian of Congress, by authority of Sec. 4948 of the Revised Statutes, and in conformity with the regulations found in Secs. 4956 and 4957; and such control did not, as we have already said, include authority to exclude from the registry any particular print, on the ground, that it should more properly be entered at the Patent Office as a trade-mark. Of course, then, when this control over the registry of the same prints, now called "labels which are not trade-marks," was transferred to the Commissioner of Patents, it had only the same limited application, and did not include any discretion to determine whether a particular label should be classed as a trade-mark or as only a label. If Congress had intended to take away

from the owner of a label his former right to determine what use he should make of it, and how he would have it entered, that intention would have been plainly expressed. The actual intention was merely to change the place of registry. When an applicant for registry complies with all the requirements of the law and the lawful regulations, as the relator appears to have done, the function of the Commissioner is merely ministerial. The peremptory writ will issue accordingly.

The Chief Justice and Justices WYLIE and JAMES sat in this case.